IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| BERNARD MCFADDEN, # 199135,  )<br>                                                         )<br>               Plaintiff,                         )<br>                                                         )<br>               vs.                                    )<br>                                                         )<br>GLENN ALWINE, M.D., SCDC MEDICAL  )<br>BOARD DIRECTOR;                              )<br>JOHN A. DAVIS;                                   )<br>LISA PARNELL, HEAD NURSE,          )<br>WATEREE CI; AND                               )<br>CHARLETTE GRECCO, PRACTITIONER,  )<br>WATEREE CI, IN THEIR OFFICIAL,        )<br>INDIVIDUAL OR PERSONAL CAPACITIES,  )<br>                                                         )<br>               Defendants.                      )<br>_____)  | Civil Action No. 3:04-2421-RBH-JRM<br><br><br><br><br><br><br><br><br><br><br><br>**REPORT AND RECOMMENDATION** |

Plaintiff filed this action on July 28, 2004.[1] He is an inmate at the Wateree Correctional Institution ("WCI") of the South Carolina Department of Corrections ("SCDC"). Defendants filed a motion to dismiss or in the alternative for summary judgment[2] on November 8, 2004. Plaintiff, because he is proceeding pro se, was advised on November 15, 2004, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a memorandum in opposition to summary judgment on December 15, 2004.

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

[2] As matters outside the pleadings have been considered, the undersigned has treated this motion as a motion for summary judgment.

## MOTION FOR PRELIMINARY INJUNCTION

On October 1, 2004, Plaintiff filed a motion for a preliminary injunction. He requests that this Court compel Defendants to stop denying him adequate medical assistance.[3] Defendants argue that Plaintiff's motion should be denied because Plaintiff has not shown that immediate or irreparable injury will result if surgery is not ordered immediately, he has not established a right to have the State perform the surgery, and his doctors have scheduled him for another medical visit.

The court is required to consider and balance four factors in determining whether to grant injunctive relief prior to a trial on the merits:

> (a)  plaintiff's likelihood of success in the underlying dispute between the parties;
>
> (b) whether plaintiff will suffer irreparable injury if the interim relief is denied;
>
> (c)  the injury to defendant if an injunction is issued; and
>
> (d) the public interest.

Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997); Hughes Network Systems, Inc. v. InterDigital Communications Corp., 17 F.3d 691, 693 (4th Cir. 1994); North Carolina State Ports Authority v. Dart Containerline Co., Ltd., 592 F.2d 749 (4th Cir. 1979); and Blackwelder Furniture Co. v. Seilig Manufacturing Co., 550 F.2d 189 (4th Cir. 1977). The two most important factors are probable irreparable injury to a plaintiff if the relief is not granted and the

---

[3] In his motion, Plaintiff also requests that the Court set a period of discovery. On September 21, 2004, the undersigned ordered that discovery be completed on or before November 4, 2004. See Scheduling Order.

likelihood of harm to a defendant if the injunction is granted.  <u>Manning</u>, 119 F.3d at 263; <u>North Carolina State Ports Authority</u>, 592 F.2d at 750.

A plaintiff does not have an automatic right to a preliminary injunction, and such relief should be used sparingly.  The primary purpose of injunctive relief is to preserve the status quo pending a resolution on the merits.  Injunctive relief which changes the status quo pending trial is limited to cases where "the exigencies of the situation demand such relief."  <u>Wetzel v. Edwards</u>, 635 F.2d 283, 286 (4th Cir. 1980).

As is discussed further below, it is unlikely that Plaintiff will prevail on his claims, and it is unlikely that he will suffer irreparable injury if injunctive relief is not granted.  It is, therefore, recommended that Plaintiff's motion for a preliminary injunction (Doc. 11) be denied.

## DISCUSSION

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs.  Defendants argue that they are entitled to summary judgment because Plaintiff fails to state a claim for deliberate indifference to any serious medical needs.

Plaintiff was involved in a motor vehicle accident on November 1, 2002, resulting in a contusion to his right knee and fractures to his left wrist and hand.  He was treated at Palmetto Richland Memorial Hospital for a scaphoid fracture and a fracture of the fifth metacarpal and released.  He did not seek orthopedic treatment for his injuries until November 26, 2002, when he was examined by Dr. Anthony Colpini at the Moore Orthopedic clinic in Columbia, South Carolina.  Defendant's Ex. 1 (Plaintiff's Medical Records from Moore Orthopedic Clinic).[4]

---

[4] Exhibits to Defendants' motion for summary judgment are referenced as "Defendants' Ex. ____."

Plaintiff had follow-up visits with Dr. Colpini each month for the next several months. Progress notes indicate that Plaintiff was exhibiting signs of improvement and his fractures were healing well. Defendants' Exs. 1-5. On March 18, 2003, Plaintiff complained of some discomfort. Dr. Colpini recommended an MRI and follow-up visit and opined that Plaintiff "may be a candidate for open reduction internal fixation and bone grafting." Defendants' Ex. 6. Plaintiff states that he was arrested on March 30, 2003, and held at the Sumter-Lee Regional Detention Center.[5] On July 8, 2003, Plaintiff sustained another injury to his left radius and ulna after an altercation without another detainee. Plaintiff claims that at the end of August 2003, after his radius and ulna were healed with deformities, he was taken to Palmetto Sports and Medicine in Sumter, South Carolina. Dr. Stroebel placed Plaintiff in a thumb splint and allegedly opined that Plaintiff needed surgery.[6] Complaint, at 4. Plaintiff was convicted on September 29, 2003, and he was sent to the Kirkland Reception and Evaluation Center of SCDC on September 29, 2003. On October 7, 2003, Dr. Michael J. Beinor of the Kirkland Correctional Institution noted Plaintiff's history of an injury to his hand in a motor vehicle accident and wrote "make arrangements at assigned institution for outside care/his lawyer will help." Defendants' Ex. 14, Treatment Encounter ("Enc.") 87. Plaintiff was encouraged to obtain surgery and/or additional care from outside

---

[5] Plaintiff appears to assert claims about his medical care while he was a pretrial detainee at Sumter-Lee Regional Detention Center. He has not, however, named Sumter-Lee Regional Detention Center or any of its employees as defendants to this action. There is no indication that Defendants to this action are associated with Sumter-Lee Regional Detention Center or that they were responsible for Plaintiff's medical care while he was there.

[6] Plaintiff has not supplied any medical records from Dr. Stroebel or Palmetto Sports and Medicine.

4

sources on October 7, 2003. Defendants' Ex. 14. On approximately November 18, 2003, Plaintiff was transferred to WCI.

Plaintiff appears to allege that his constitutional rights were violated because Defendants were deliberately indifferent to his medical conditions (including injuries to his radius, ulna, and metacarpal) by failing to refer him to an orthopaedist, failing to provide him with an MRI, and failing to provide him with surgery. Defendants argue that they provided medical care to Plaintiff, they determined that Plaintiff did not have a serious medical condition requiring immediate surgery, and they were not indifferent or deliberately indifferent to his condition. They also argue that Plaintiff's allegations involve solely discretionary medical decisions that are not actionable under the Eighth or Fourteenth Amendment.[7]

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
> * * * * * * *
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless

---

[7]Plaintiff's claims are properly analyzed under the Eighth Amendment rather than the Fourteenth Amendment because he was a convicted prisoner and not a pretrial detainee during the time he was housed at SCDC.

5

> of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a

6

> significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that Defendants were deliberately indifferent to any of his serious medical needs. Review of Plaintiff's medical records reveals that he was examined by medical personnel at SCDC on numerous occasions and that he was treated with pain medications and a splint. See Defendants Exs.1, 11, 14-21; Lisa Parnell Aff; Glenn Alewine Aff; Charlotte Grecco Aff.

On February 5, 2004, an x-ray of Plaintiff's left hand revealed "no acute abnormalities" and it was noted that there was no obvious reason to seek an orthopedic consultation at that time. Defendants' Ex. 16, Enc. 95. On July 26, 2004, Plaintiff received a consultation with an orthopaedist. The orthopaedist recommended that Plaintiff wear a wrist splint for one month. Defendants Exs. 19-20, Enc. 119.

Dr. J. Glenn Alewine states that in his professional medical judgment, taking into account all medical records and the complaints alleged by Plaintiff, there was no indifference to Plaintiff's medical needs or concerns. He further opines that prescribing Percogesic and Ibuprofen in

7

response to Plaintiff's complaints of left wrist and hand pain was prudent and reasonable. Plaintiff was scheduled for another orthopedic visit on October 20, 2004. Alewine Aff.

Dr. Colpini's progress notes showed that Plaintiff's fractures were healing and he was improving after his 2002 accident. On March 18, 2003, Dr. Colpini merely opined that Plaintiff might be a candidate for surgery. Defendants Ex. 6. Plaintiff was not placed in SCDC custody until over five months later. As discussed above, Plaintiff received numerous medical examinations at KCI and WCI, including at least one orthopedic consultation. Plaintiff received x-rays and was treated with pain medications and a splint.

Plaintiff appears to disagree with the type and amount of medical treatment he received. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). The provision of medical care by prison officials is not discretionary, but the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). A disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F.2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Although Plaintiff believes that he should have received different medical treatment, he fails to show that Defendants' actions or inactions rose to the level of a constitutional violation.

Additionally, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, 429 U.S. at 106. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792,

8

793-94 (4th Cir. 1987); and <u>Pink v. Lester</u>, 52 F.3d 73, 78 (4th Cir. 1995)(applying <u>Daniels v. Williams</u> and <u>Ruefly v. Landon</u>: "The district court properly held that <u>Daniels</u> bars an action under § 1983 for negligent conduct."). Additionally, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. <u>DeShaney v. Winnebago County Dep't of Social Services</u>, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. <u>Estelle v. Gamble</u>, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

## CONCLUSION

Based upon review of the record, it is recommended that Plaintiff's motion for a preliminary injunction (Doc. 11) be denied and Defendants' motion for summary judgment (Doc. 19) be granted.[8]

                                        Respectfully submitted,

                                        s/Joseph R. McCrorey
                                        United States Magistrate Judge

June 17, 2005
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

---

[8] It is unclear whether Plaintiff is attempting to assert any state law claims. As Plaintiff fails to show that Defendant violated his rights under § 1983 (as discussed above), only his state law claims would remain. Thus it is also recommended that, pursuant to 28 U.S.C. § 1367(c)(3), that any remaining state law claims be dismissed <u>sua</u> <u>sponte</u>.

9

## Notice of Right to File Objections to Magistrate Judge's Report and Recommendation
## &
## The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201
